UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS

| | |
|---|---|
| UNITD STATES OF AMERICA,<br>*Plaintiff,*<br>v.<br><br>WILLIAM EDWIN TOWNLEY,<br>*Defendant.* | Case No. 1:16-CR-00021-TWP-DML<br>*USM Number: 12748-028*<br><u>Before Judge Tanya Walton Pratt</u><br><br>**MOTION FOR EARLY<br>TERMINATION OF<br>SUPERVISED RELEASE** |

> Denied. The Government and Probation Officer object to early release, based on the nature of the conviction and the length of supervision served. Defendant should continue to comply with the conditions of supervision.
> TWP
> 11-8-2017
> (copy to defendant)

**NOW COMES** WILLIAM EDWIN TOWNLEY, motioning this Court *in propria persona* (*pro se*) to terminate the imposed term of supervised release, reducing such to a "time already served" duration. This request is made pursuant to title 18 United States Code §3583(e) and Federal Rules of Criminal Procedure 32.1(c). Under the same rule of criminal procedure, no hearing is requested in this matter.

This document complies with Local Ruled 5-1 and 7-1 in general, and Local Criminal Rule 49-1(a)(4) for manual filing. What follows is a concise memorandum of case history, points of authority, policy and argument to justify the request sought herein. It is written in double-space, 14-point Times New Roman and less than twenty-five (35) pages long.

1. On December 22, 2015 I was sentenced to a "time served" sentence of

incarceration after pleading guilty to one count of failing to register as a sex offender, a violation of 18 U.S.C. §2250(A). Dkt. Ent. 4. I was sentenced to 5 years of supervised release after my release from Bureau of Prisons (BOP) custody, with mandatory and standard conditions of release, and the additional conditions that I:

- Participate in substance abuse treatment;
- Avoid contact with persons underage, except with a supervising adult; and,
- Submit to warrant-less searches.

2. I moved here to the Indianapolis area to continue my supervision, and my court case was transferred here shortly thereafter, in January of 2016. To stay in line with local probationary policy, I acquiesced to two modifications of my supervision terms[1] to include participation in a sex offender treatment program and probationary polygraph testing.

3. **Jurisdiction**: This Court has jurisdiction over this case beginning in January of 2016 pursuant to an 18 U.S.C. §3605 transfer of jurisdiction. Dkt. Ent. 3.

4. **Authority**: This Court is granted the authority to terminate a term of supervised release by 18 U.S.C. §3583(e)(1) which, after considering specific sentencing

---

1  By signing hearing waivers.

factors from §3553(a), allows a district court judge to "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure ... if it is satisfied that such action is warranted by the conduct of the defendant released and in the interests of justice."

5. Paraphrased, the §3553(a) factors that are to be considered for an early termination request are:

   - §§(a)(1): The nature and circumstances of the offense;
   - §§(a)(2)(B): To afford deterrence to criminal conduct;
   - §§(a)(2)(C): To protect the public from future crimes;
   - §§(a)(2)(D): To provide education and job training, provide medical care or other correctional treatment;
   - §§(a)(4): The kinds of sentences available in the guidelines;
   - §§(a)(5): In line with relevant policy;
   - §§(a)(6): Avoiding unwarranted differences in sentence between similar defendants with similar conduct;
   - §§(a)(7): To provide restitution to any victims.

6. The applicable Federal Rule of Criminal Procedure is 32.1(c), which allows for modifications of supervised release. This rule requires a hearing unless the relief sought is favorable to the defendant and that an Assistant United States Attorney has received notice of the relief sought and is given reasonable opportunity to object (Fed R. Crim P (2)(B) & (C)).

7. Committee notes to this procedural rule don't spend much time on termination

requests, but bring up a defendant's right to present mitigating information when a modification request would be of greater restriction to the defendant. In this case, I both waive the hearing, and request that a decision in this matter be made without such a hearing once the government is given an opportunity to proffer a written objection if it chooses to do so.

8. **Controlling Precedent**: The purposes of supervised release have been variously described as rehabilitation, deterrence, training and treatment, protection of the public, and reduction of recidivism. *See United States v. Johnson,* 529 U.S. 53, 59-60 (2000); *United States v. Siegel,* 753 F.3d 705-708 (7th Cir. 2014); *United States v. Evans,* 727 F.3d 730, 733 (7th Cir. 2013). Supervised release was not intended to be imposed for the purposes of punishment or incapacitation, "since those purposes will have been served to the extent necessary by the term of imprisonment." S. Rep. No. 98-225, at 125; *see also Johnson,* 529 U.S. at 59... The Supreme Court has described supervised release as "the decompression stage" between prison and full release. *Johnson v. United States,* 529 U.S. 694, 709 (2000).

9. "Prisoners may, of course, vary in the degree of help needed for successful reintegration. Supervised release departed from the parole system it replaced by giving district courts the freedom to provide post-release supervision for those,

and only those, who needed. Congress aimed, then, to use the district courts' discretionary judgment to allocate supervision to those releases who needed it most." *id.*" *United States v. Kappes,* 782 F.3d 828 (7th Cir. 2015).

10. The three cases that make up the *Kappes* decision all dealt with issues conserning sex offenders and their conditions of supervised release. The "degree of help" I need should not include sex offender treatment and polygraphs, as I was guilty of failing to update my sex offender registration, not re-offending sexually.

11. The issue of my continued punishment for this could have been directly addressed by the Supreme Court in *Does v. Snyder,* __ F.3d __, 2016 WL 4473231 (6th Cir. 2016), as continued punishment and inclusion on the sex offender registry (as such registries are made in compliance with the Adam Walsh Act of 2006 (AWA)). It is my contention that I was never originally placed on a sex offender registry, and the *Kennedy-Mendoza* test here clearly indicates *ex post facto* punishment for a crime I already completed a sentence for. However, SCOTUS denied *Certiorari* during this Fall term and so the issue outside of the 6th Circuit remains unresolved. More on this below.

12. **Policy**: The relevant section of the Sentencing Guidelines Manual can be found in §5D1.2. The policy here made a sharp change in 2011 when the amendments to the manual that year specifically changed this section to encourage early

termination in appropriate cases, rather than in cases which show "unforeseen circumstances" or "exceptional behavior".

13. These two phrases are used a lot to dissuade district courts from granting early termination requests where defendants have demonstrated no further need for supervision. They come from an opinion from the Second Circuit in *United States v. Lussier*, 104 F.3d 32 (2nd Cir. 1997), and since the 2011 changes to the guidelines manual, policy has shifted away from this arbitrary and high bar.

14. "The guidelines encourage . . . [courts] to exercise this authority in appropriate cases, particularly noting that a court may impose a longer term of supervised release on a defendant with a drug, alcohol or other addiction, but may then terminate the supervised release term early when a defendant successfully completes a treatment program, thereby reducing the risk to the public from further crimes of the defendant."[2] U.S.S.G. §5D1.2 cmt. n. 5 (Internal quotations omitted).

15. Probationary policy in regards to recommending early termination in supervised release cases comes from Monograph 109. In tandem with the Sentencing Guidelines Manual notes in §5D1.2, Probation Monograph 109 informs probation

---

[2] From "Primer: Supervised Release" (Office of General Counsel, United States Sentencing Commission; 2015). Available at: https://www.ussc.gov/sites/default/files/pdf/training/primers/2015_Primer_Supervised_Release.pdf

officers that they "**should consider the suitability of early termination for offenders as soon as they are statutorily eligible.**"

16. When making this determination, the 9 general criteria for making a recommendation to the court for early termination are found in section §380.10(b):

   *(1) Stable community reintegration;*

   *(2) Progressive strides toward supervision objectives and in compliance with all conditions of supervision;*

   *(3) No aggravated role in the offense of conviction, particularly large drug or fraud offenses;*

   *(4) No history of violence;*

   *(5) No recent arrests or convictions;*

   *(6) No recent evidence of alcohol or drug abuse;*

   *(7) No recent psychiatric episodes;*

   *(8) No identifiable risk to the safety of any identifiable victim; and,*

   *(9) No identifiable risk to public safety based on the Risk Prediction Index."*

17. Later in that same section it states that the existence of outstanding financial

obligations *per se* does not adversely affect early termination eligibility (§§c), and failure to meet criteria listed should not automatically exclude an offender from further consideration (§§d), and there is <u>a presumption in favor of recommending early termination</u> for probationers and supervised releasees who have been supervised for at least 18 months and are not violent, drug, sex offenders, terrorists, present a risk to public or victims, and are free from any moderate or higher violations.

18. **Argument:** Of all the sentencing factors from §3553(a) that are considered at original judgment, one is conspicuously missing from the list in §3583(e)(1): "the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."[3] That means that supervised release is not part of the punishment phase of a judgment, but serves other intentions of sentencing. This is evinced by the clarity given by the sentencing commission in §5D1.2, citing rehabilitation completion as a valid reason for terminating a term of supervision early.

19. The Supreme Court clarified this in <u>Johnson V. United States</u>, 529 U.S. 694, 709 (2000), when supervised release was described as the "decompression stage" of a judgment. See also <u>United States v. Kappes</u>, 782 F.3d 828 (7th Cir. 2015). If, then, the transition or decompression from incarceration, and there are no other goals of

---

[3] 18 U.S.C. §3553(a)(2)(A)

supervision (or special conditions of supervision) left to achieve, then the purpose of supervision has been exhausted and early termination is warranted. The interests of justice are served, by statutory definition and precedent, by early release in these situation.

20. Regarding §3553(a)(2)(B) & (C), I am of no risk to re-offend. First, a veritable mountain of studies from the DOJ and academic criminologists, as well as treatment professionals, who have published statistics on the recidivism rate of sex offenders show that I am at exceptionally low risk to the community of re-offending. "Critics also question the basic empirical underpinnings of sex offender registries, noting that contrary to the understanding of legislatures and courts (including the U.S. Supreme Court)[4] sex offenders do not recidivate at higher rates than offender subgroups."[5] The following are only three examples of a growing body of evidence which illustrates this point:

- In the DOJ's own study from 1994, a three-year review of released sex offenders showed a rate of re-offense in the sexual crime category at 5.3%.[6]
- Next, a 2012 from Connecticut shows rates of new convictions of arrested prior-sex-offenders at a staggeringly low 2.7% over 5 years.[7]

---

[4] See Ira M. Ellman & Tara Ellman, "Frightening and High": The Spreme Court's Crucial Mistake about Sex Crime Statistics, 30 Const. Comment. 495 (2015). Referencing Smith v. Doe, 538 U.S. 84.
[5] Wayne Logan, Reforming Registries, Academy for Justice, A Report on Scholarship and Criminal Justice Reform (2017)
[6] Recidivism of Sex Offenders Released From Prison in 1994, (Dubrose, Langan, and Schmitt). Published by the U.S. Department of Justice, Bureau of Justice Statistics, available at: http://www.bjs.gov/content/pub/pdf/rsorp94.pdf
[7] From Sex Offender Recidivism in Connecticut, a Study of 746 Male Offenders release from prison in 2005 – 5 year study. Available from the Connecticut Office of Policy & Management: http://www.ct.gov/opm/lib/opm/cjppd/cjresearch/recidivismstudy/sex_offender_recidivism_2012_final.pdf

- Finally, from the Maine Statistical Analysis Center, USM Muskie School of Public Service, in 2010 shows released male offenders in Maine are re-convicted of new sex offenses at a rate of 3.8% in their first three years of freedom.[8]

21. Second, the effect of early termination, as requested in this motion, reduces my likelihood to recidivate. A recent recidivism study by the AOUSC-OPPS examined a cohort of offenders whose supervision terms expired or were terminated early in fiscal year 2005. The study found that during the 36-month follow-up period, "offenders granted early termination do not pose a greater safety risk to the community" than offenders who successfully served the entire supervised release term imposed by the sentencing court. "In fact, early-term offenders in this study presented a lower risk of recidivism than their full-term counterparts. Not only were early-term offenders charged with a new criminal offense at a lower rate than full-term offenders, they were charged with proportionally fewer felonies..."[9]

22. Third, Data accumulated by the Sentencing Commission and released in a report just this year show that, in terms of the age of released offenders, I am in the

---

[8] "Sexual Assault Trends & Sex Offender Recidivism in Maine" 2010 from the study of 552 Male Offenders released from prison between 2004 and 2008. Available from USM at:
http://muskie.usm.maine.edu/justiceresearch/Publications/Adult/Sexual_Assault_Trends_and_Sex_Offender_Recidivism_in_Maine_2010.pdf

[9] See James L. Johnson, *Are Early Terminated Offenders a Greater Risk to the Community? NEWS AND VIEWS, Vol. XXXV, No. 2, at 1 (Jan 18, 2010).* Published by AOUSC-OPPS

lowest likelihood of any offender category or of *any* metric to return to prison. Offenders over 60 at sentencing are shown to have a reincarceration rate of 5.7%, and offenders over 60 at the time of their release are marginally higher at 6.6%. Numerous studies show that age is one of the most reliable predictors of recidivism rates. Nationally, prisoners between the ages of 18 and 29 experience a recidivism rate of over 50%, while those 55 or older experience a rate of only 2%."[10] At 58 years old and fully physically disabled, I am among the lowest threat to society of any released offender.[11]

23. As stated above, I am fully physically disabled due to a broken back. I derive income from Social Security, and I don't get out too much. Compounding the issues related to a fixed income, the USPO is now asking me to pay for the substance abuse treatment I completed over a year ago. I presume this is to make up for budgetary shortfalls as the FY2018 budget went into effect on the first of this month, but it seems to me as though asking for money for treatment already paid for long ago is unethical at best, and unlawful at worst.

24. Certain sexual offenses have a mandatory minimum required term of supervised release of 5 years. However, a court may terminate supervised release early even if the statute of conviction originally required a particular term of supervised

---

10 U.S. Department of Justice Bureau of Justice Statistics, Trends in State Parole, 1999 – 2000.
11 Recidivism Among Federal Offenders: A Comprehensive Overview, Appendix A-3. (United States Sentencing Commission, 2016). Available at: *http://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2016/recidivism_overview.pdf*

release. *See, e.g., United States v. Spinelle*, 41 F.3d 1056, 1069 (6th Cir. 1994); *United States v. Gainer*, 936 F.Supp. 785, 786 (D. Kan. 1996); *United States v. Scott*, 362 F.Supp.2d 982, 984 (N.D. Ill. 2005); *United States v. McClister*, 2008 WL 153771, *2 (D.Utah 2008).

25. I have completed nearly two of the five years mandated, and I require no further supervision or the treatment as thrust upon me by the probation office. I have completed the requisite year of supervision before a request like this can be considered, and am close to completing a second year for failing to update paperwork. These ranges are reflected in policy in U.S.S.G. 5D1.2(a)(2). Thus §3553(a)(4) & (5) weigh in my favor.

26. As a final note on the law and statute, I'd like to discuss the issue of *ex post facto* implications of the duty to register as a whole. For 14 years, courts have upheld that registries nationwide are civil and regulatory, although it is more than common knowledge that they inflict punishment and restricions akin to probation and parole.[12] Since last year, though, cases like *Snyder, supra* which states that Michigan's AWA-compliant registry violates *ex post facto* protections, and the Colorado case last month that declared that state's sex offender registry violates the 8th Amendment's protection against cruel and unusual punishment. (*Millard, et.al, v. Rankin*, No. 13-C-02406-RPM (DCO) before judge Matsch). These are

---

12 One of the main spokes of the Kennedy-Mendoza test. See the 6th Circuit opinion in *Snyder, id* at 9.

sharp diversions from the cases that came before them, starting with *Smith v. Doe*, 538 U.S. 84 (2003), and continuing with it's progeny (e.g. *United States v. Kebodeaux*, 133 S.Ct. 2496 (2013)).

27. I was guilty of a crime 31 years ago, and not required to register as a sex offender until 2011, under a "Megan's Law" registry that may or may not violate the constitution. However, since then I have been arrested, made a second-time offender and placed on onerous probation for failing to register for a civil scheme that didn't even exist when I was originally convicted, and wouldn't for another 14 years. See Def. Sentencing Memorandum at 2. DNH Dkt. Ent. 16.

28. I do not ask here for a finding of constitutional fault with the sex offender registries of New Jersey and New Hampshire, nor a dismissal of charges under constitutional questions of *ex post facto* applications. I simply point to the 31 years it has been since I've been without a non-administrative crime and ask that I be relieved of the duty to be supervised and move on the with remainder of my life.

29. A look at the Monograph 109 test for the USPO to consider recommendations on requests for early termination of supervised release addresses many of the same issues from §3553, but from a more integration related standpoint. I'm stable and

integrated in the community. I have no need for sex offender treatment programs. I have completed substance abuse treatment, and present no risk to the community. I owe no money to anybody and am fully prepared to move beyond supervised release

## CONCLUSION

Considering the cost of supervision, and based upon the reasons and factors discussed in this motion, I respectfully request that this Court terminate the remainder of my term of supervised release.

Respectfully submitted on this 23 day of Oct, 2017.

/s/ William E Townley
WILLIAM EDWIN TOWNLEY
*Pro Se* Defendant, Movant

CERTIFICATE OF SERVICE
FOR PRO SE DOCUMENTS

I, WILLIAM EDWIN TOWNLEY, do hereby certify that I have served a true and correct copy of the following document,

**MOTION TO TERMINATE DEFENDANT'S SUPERVISED RELEASE TERM**

upon the court and the office of the United States Attorney:

| **Assigned AUSA** | **Clerk of the United States District Court** |
|---|---|
| U.S. Attorney's Office | S. District of Indiana – Indianapolis |
| 10 W Market Street | Birch Bayh Federal Bldg |
| Suite 2100 | 46 East Ohio Street, Room 105 |
| Indianapolis, IN 46204 | Indianapolis, IN 46204 |

by placing it in a sealed, postage prepaid envelope by United States Postal Mail

on the 23 day of Oct, 2017.

_____
WILLIAM EDWIN TOWNLEY
*Pro Se* Movant